70 N.J. 56 (1976)
356 A.2d 385
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TYRONE BEST, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued September 22, 1975.
Decided April 7, 1976.
*57 Mr. Lowell Espey, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Espey, of counsel and on the brief).
Mr. David H. Ben-Asher, designated counsel, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Ben-Asher, on the brief).
The opinion of the Court was delivered by PASHMAN, J.
*58 In this case, we are asked to determine whether a conviction for possession of a dangerous knife merges with a conviction for robbery while armed with said dangerous knife where both offenses arise from the same criminal episode.

I
On the evening of February 8, 1973, Robert Reynolds was in the Wonder Bar on Ocean Avenue in Asbury Park, playing pool and drinking beer. At approximately 11 P.M. defendant Tyrone Best and codefendant Gwendolyn Brown walked into the bar. Reynolds did not know either of them at the time. After he had finished his game of pool, Reynolds put on his coat and departed. Best and Brown left the bar a few moments later. While Reynolds was starting his car, Brown approached the driver's side of the vehicle, knocked on the window and asked Reynolds if she and her brother could have a ride to Embury Avenue in Neptune. Reynolds consented, whereupon Brown sat next to Reynolds in the front seat while Best sat in the back.
Reynolds then drove to Embury Avenue, where he stopped the car by putting his foot on the brake pedal while leaving the vehicle in "drive." At this point Best grabbed Reynolds around the neck, forced him down on the seat, stuck a knife into his cheek and threatened to kill him if he made any noise. After a few seconds, Reynolds felt blood trickling down his face. He observed that the knife was about six inches long and had a wooden handle. Brown took Reynolds' wallet which contained approximately $210.
Best then told Reynolds that he was going to take the vehicle in order to facilitate his escape, but would abandon it down the street. He again threatened to kill Reynolds if he made any noise. As Reynolds moved to put the car into "park," he felt the knife cut deeper into his cheek. Best asked Reynolds what he was doing. After Reynolds explained, Best allowed him to put the car into "park" and *59 then step out into the street. Best and Brown drove away. Reynolds soon recovered his automobile, returned to the bar to question some of the patrons about defendant's identity and from there was taken to the hospital where he received several stitches for his wound.
Defendant Best was apprehended and indicted for possessing a dangerous knife (N.J.S.A. 2A:151-41(c)), assault with an offensive weapon (N.J.S.A. 2A:90-3) and armed robbery (N.J.S.A. 2A:141-1 and 2A:151-5). The knife employed in the robbery was never found. In another count, codefendant Brown was charged with aiding and abetting defendant Best in violation of N.J.S.A. 2A:85-14.
At the close of the State's case at the ensuing trial, counsel for Best moved that the different charges be merged so that only the armed robbery count would be presented to the jury. The court reserved decision and, after summation by the parties, denied the motion. A subsequent request by defendant that the jury be charged that it could not return separate convictions unless it determined that separate and distinct crimes had been committed was also denied.
Defendants were found guilty on all counts. Best was sentenced to the New Jersey State Prison for a term of seven to ten years on the robbery count, a consecutive sentence of three to five years for armed robbery, a consecutive sentence of two to three years for assault with an offensive weapon and three to five years to be served concurrently with the other sentences for possession of a weapon. Codefendant Brown was sentenced for an indeterminate term to be served at the Correctional Institution for Women at Clinton.
The Appellate Division, in an unreported opinion which resolved a number of issues in addition to the merger question, vacated Best's convictions for possession of a dangerous knife and assault with an offensive weapon stating that "the facts clearly show a single transaction" and that "the possession of the knife and the assault with an offensive weapon were integral parts of the principal offense charged, namely, *60 the armed robbery." The convictions for robbery and for armed robbery were affirmed as was codefendant Brown's conviction for aiding and abetting.
On January 29, 1975, we denied Best's petition for certification but granted the State's cross-petition for certification from that portion of the Appellate Division judgment vacating defendant's conviction for possession of a dangerous weapon.[1] 67 N.J. 81 (1975). Consequently, the sole issue before this Court is whether Best's conviction for carrying and possessing a dangerous knife merges with his conviction for armed robbery. Having reviewed the circumstances of the case, we affirm the Appellate Division and hold that these convictions merge.

II
It has long been settled that one may not be punished twice for the same offense. State v. Jamison, 64 N.J. 363, 380 (1974); State v. Roller, 29 N.J. 339, 346 (1959); State v. Labato, 7 N.J. 137, 143, 145, 150 (1951); State v. Cooper, 13 N.J.L. 361, 375 (Sup. Ct. 1833); State v. Hill, 44 N.J. Super. 110, 112 (App. Div. 1957). We have reaffirmed this principle on several occasions, most recently in State v. Davis, 68 N.J. 69 (1975), where Justice Clifford, speaking for a majority of the Court, discussed some of the policy considerations which underlie this fundamental proposition:
We are ... in complete accord on this fundamental point: If an accused has committed only one offense, he cannot be punished as if for two. Hence, we reaffirm the prohibition against multiple punishment for a single wrongdoing. [Citations omitted.] Such a proscription not only tends to insure that the punishment imposed is commensurate with the criminal liability, by limiting judges and prosecutors alike to acting within the bounds of the legislative design; *61 but it also addresses the inevitable conflict between legislative attempts to stuff all kinds of anti-social conduct into the general language of a limited number of criminal offense categories, and the legislative desire not to be inordinately vague about what behavior is deemed "criminal." [68 N.J. at 77].
Although we could not agree in that case as to the source of the principle, we found it unnecessary to determine whether the prohibition against double punishment for the same offense rests on principles of double jeopardy, substantive due process or some other legal tenet. 68 N.J. at 77. For purposes of deciding the instant case, we again find it unnecessary to resolve this theoretical legal question. It is sufficient that where an accused has been convicted for contemporaneous separate offenses which are, in fact or by legislative intent, indistinguishable, then the resulting convictions must be merged.[2]
The problem of merger often arises when an accused participates in a single, continuous criminal episode and then is prosecuted for several crimes each of which represents a different stage of the episode. In the instant case, we proceed from two preliminary observations: first, that the principal offense, the robbery, was a single, continuous criminal transaction and second, that the Legislature, by enacting the statutory provisions involved in this case, did intend to interdict different crimes. See, e.g., State v. Ortiz, 124 N.J. Super. 189 (App. Div. 1973), where, under facts different from those presented here, defendant was convicted of both possession of a dangerous knife and armed robbery. In merger cases of this sort, courts most often apply a standard which asks "whether a particular act involved in a single *62 transaction is a distinct criminal affair or an integral part of the principal offense charged. A prosecution for any part of a single crime bars any additional prosecution or sentence for the whole crime or any constituent element of the whole crime...." State v. Hill, supra, 44 N.J. Super. at 112-13; State v. Craig, 48 N.J. Super. 276, 279 (App. Div. 1958); cf. State v. Hampton, 61 N.J. 250 (1970). Just last year, in State v. Jamison, supra, 64 N.J. at 380, we cited this passage with approval and held it to be the correct rule. While accurate as a general proposition of law, the test is of only limited utility since it fails to delineate the precise meaning of a "single crime."
In recent years this Court has eschewed a mechanical application of the traditional "offense-defining" criteria for "sameness," which are contained in the all-to-narrow "same evidence," "same transaction," or "lesser-included offense" tests. In State v. Gregory, 66 N.J. 510, 514-17 (1975), Justice Jacobs examined the authorities in support of these tests and concluded that their narrow or mechanical application could result in either harassment of the defendant or frustration of the State's goal to bring the guilty to justice. See also State v. Currie, 41 N.J. 531 (1964); State v. Berry, 41 N.J. 547 (1964); State v. Thomas, 114 N.J. Super. 360, 364-65 (Law Div. 1971), mod. 61 N.J. 314 (1972). Recognizing that these standards "were not absolute in nature, that the emphasis should be placed on underlying policies rather than on technisms, and that primary consideration should be given to factors of fairness and fulfillment of reasonable expectations," State v. Berry, supra, 41 N.J. at 551; cf. State v. Currie, supra, 41 N.J. at 539; State v. Gregory, supra, 66 N.J. at 517; State v. Roller, supra, 29 N.J. at 346; State v. Louf, 126 N.J. Super. 321, 338 (App. Div. 1973), aff'd in part and rev'd in part, 64 N.J. 172 (1973); State v. Ferrante, 111 N.J. Super. 299, 303 (App. Div. 1970), this Court has in recent years employed "a certain flexibility of approach" to determine whether two offenses are factually distinct. State v. Davis, *63 supra, 68 N.J. at 81; State v. Bell, 55 N.J. 239 (1970); State v. Cormier, 46 N.J. 494, 504 (1966); State v. Berry, supra; State v. Currie, supra. This approach contemplates a multi-faceted analysis which would consider the nature of the offenses, the time and place of each offense, whether the evidence submitted as to one count of an indictment is necessary and/or sufficient to sustain a conviction under another count, whether one offense is an integral part of the larger scheme, the intent of the accused and the consequences of the criminal standards transgressed. See State v. Davis, supra, 68 N.J. at 81. With these considerations in mind, we now examine the "offenses" involved in the instant case.

III
The statute relating to the possessory offense, N.J.S.A. 2A:151-41(c) provides in pertinent part:
... any person who carries, holds or possesses
... on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area: * * * (c) Any dangerous instrument of the kinds known as a ... dangerous knife ... is guilty of a high misdemeanor.
In State v. Green, 62 N.J. 547 (1973), we construed this statute as it applies to possession of a "dangerous knife." Holding that the Legislature intended to proscribe "naked possession" of certain dangerous instruments (62 N.J. at 555), we added that to sustain a conviction for possession of a knife, the knife must be shown to be "dangerous." This means that where the knife is not "dangerous per se," the State must establish from the circumstances of the case that "the purpose of carrying the instrument is its use as a weapon." 62 N.J. at 560. Accordingly, in the case at bar the elements which the State must prove beyond a reasonable doubt are: (1) that defendant knowingly carried or possessed the knife in question and (2) that the knife in question was a dangerous knife in that the purpose of carrying *64 the knife was its use as a weapon. See State v. Green, supra; State v. Howard, 125 N.J. Super. 39, 45 (App. Div. 1973), State v. Ebeon, 122 N.J. Super. 552 (App. Div. 1973), certif. den., 63 N.J. 250 (1973); State v. Horton, 98 N.J. Super. 258 (App. Div. 1967), certif. den., 51 N.J. 393 (1968); Proposed New Jersey Penal Code, 1 New Jersey Criminal Law Revision Commission, The New Jersey Penal Code, § 2C:39-3(i) at 137 (1971); Model Jury Charges Criminal, New Jersey Supreme Court Committee on Model Jury Charges, § 2.251 (1973).[3]
*65 The crime of robbery as defined in N.J.S.A. 2A:141-1 is the forcible taking of money or personal goods from the person of another, by violence or by putting him in fear. Where a weapon is used in the commission of that crime, N.J.S.A. 2A:151-5 requires imposition of an additional sentence, as follows:
Any person who commits or attempts to commit ... robbery ... when armed with or having in his possession any ... dangerous instrument of any kind, usually known as a ... dangerous knife... shall, in addition to the punishment provided for the crime, be punished on a first conviction by imprisonment for not less than one or more than 10 years; .... No such additional punishment shall be imposed unless the indictment shall have averred that the person was armed with or had in his possession any such instrument and conviction was had thereon.
These two statutes, which must be read in pari materia, prohibit and punish the crime of armed robbery. In order to sustain a conviction for armed robbery as applied to the facts of this case, the State must establish (1) that the defendant did, in fact, commit the robbery, (2) that the defendant had a knife "in his possession" during the commission of the robbery, and (3) that the knife in question was "dangerous."
It is clear from the foregoing that the elements of possession of a dangerous weapon under N.J.S.A. 2A:151-41(c) and of possession of a knife during the commission of a robbery under N.J.S.A. 2A:151-5 are identical. Both require proof that the knife was in the possession of defendant and that the instrument was in fact a "dangerous" knife. *66 In addition, the proofs submitted in the instant case to establish each of these elements were likewise identical. Possession was established by the victim's testimony that defendant wielded a knife during the course of the robbery. Without this testimony, the State would have failed to sustain the requisite element of possession with respect to both offenses. As to the character of the knife, we note that since the knife was never found, the only evidence submitted was the victim's testimony that the knife was about six inches long and had a wooden handle. Because this testimony may depict an ordinary knife or some other utensil as well as an inherently dangerous knife, the weapon used by Best cannot be deemed to be dangerous per se. Therefore, to prove that the knife in question was dangerous, the State had to demonstrate that defendant intended to use the knife as a weapon in the robbery. Obviously, the proofs necessary and sufficient to convict defendant of the possessory offense were identical to those necessary and sufficient to sustain the indictment under N.J.S.A. 2A:151-5.
In this respect, the case at bar differs from cases involving illegal possession of a firearm in violation of N.J.S.A. 2A:151-41(a), (b), which additionally require proof of failure to obtain a permit or purchaser identification card. In State v. Morales, 127 N.J. Super. 1 (App. Div. 1974), for example, which involved possession of a firearm without a permit and assault with an offensive weapon the Appellate Division distinguished the case before it from one similar to the case at bar:
Nor do we agree that the offenses charged constitute a fractionalization within the doctrine enunciated in State v. Jones, 94 N.J. Super. 137 (App. Div. 1967), as defendant contends. In Jones, defendant was charged with robbery while armed with a knife, and with unlawful possession of the knife. Conviction of the latter charge required the State to prove unlawful use or an intent to use the knife unlawfully against another (N.J.S.A. 2A:151-56). The court there held that since proof of the robbery was necessary to prove both the robbery and the necessary ingredient of unlawful use or attempt so to use in the possession statute, there was a *67 merger of offenses and only one crime could be charged. 94 N.J. Super. at 140. [127 N.J. Super. at 3-4]
Similarly, the instant case is distinguishable from those cases where merger of two offenses is denied because the proofs supporting one offense are neither components of nor comparable to proofs supporting the other. Cf. State v. Leibowitz, 22 N.J. 102 (1956) (unlawful concealmeant of a firearm and assault with intent to kill); State v. Boening, 63 N.J. Super. 588 (App. Div. 1960) (armed robbery and atrocious assault and battery); State v. Craig, 48 N.J. Super. 276 (App. Div. 1958) (possession of burglary tools and breaking and entering); State v. Tumbiolo, 28 N.J. Super. 231 (App. Div. 1953), certif. den. 14 N.J. 495 (1954), cert. den. 347 U.S. 948, 74 S.Ct. 647, 98 L.Ed. (1954) (possession of a concealed firearm without a permit and armed robbery).
Furthermore, it is clear from the facts of this case that the act of possessing and carrying a knife was an integral part of a larger criminal scheme, i.e., the armed robbery. See State v. Jones, 94 N.J. Super. 137 (App. Div. 1967), where possession of a knife with intent to use it, N.J.S.A. 2A:151-56, merged with the greater crime of armed robbery, N.J.S.A. 2A:141-1 and 2A:151-5. Cf. State v. Jamison, supra; State v. Riley, 28 N.J. 188 (1958), cert. denied, 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832 (1959); State v. Hill, supra. There is no evidence here that defendant carried this knife at a time before or after the robbery, or possessed it for any purpose other than perpetrating the robbery. In this respect this case differs from State v. Ortiz, supra, 124 N.J. Super. 189, where the court held that possession of a dangerous knife did not merge into a conviction for armed robbery because "defendant was found in possession of the knife when he was apprehended an appreciable time subsequent to the robbery." In addition, the armed robbery in that case was established not by proof that defendant had a *68 knife, but by evidence that during the robbery defendant's accomplice had threatened the victim with a gun.
These considerations, taken together, lead us to the conclusion that the possession of a dangerous knife and the crime of armed robbery constitute a single offense under the circumstances of this case. Therefore, they should be held as merging with each other. To hold otherwise would mean that a defendant who is convicted of robbery under circumstances similar to this case, without any additional evidence, would automatically and necessarily be convicted of N.J.S.A. 2A:151-41(c) (possession of a dangerous instrument) on the proof supporting his armed robbery conviction. Conversely, proof that he violated N.J.S.A. 2A:151-41(c) would automatically and necessarily mean that he would be subject to additional punishment under N.J.S.A. 2A: 151-5. Entry of separate convictions with the imposition of separate sentences under such circumstances would constitute double punishment for the same wrongdoing. Surely, the Legislature did not intend such a result.[4] Note, "Twice in Jeopardy," 75 Yale L.J. 262, 321 (1965).

*69 IV
Some additional comments are in order with respect to several of the State's contentions.
The State argues that the Legislature may fractionalize a single criminal episode into distinct acts, elevate each act to a distinguishable crime and punish each act separately for the purpose of aggravating the total punishment imposed for the criminal transaction. We have no doubt that such fractionalization of offenses may be proper where the acts are in fact distinct, where the Legislature intended them to be punished separately and where the fractionalization does not otherwise violate principles of due process and double jeopardy. State v. Davis, supra, 68 N.J. at 78.[5] *70 In the instant case, however, it is clear that the Legislature did not intend to further aggravate the punishment imposed for armed robbery by fractionalizing the criminal transaction and punishing each component separately, for it has already done so by enacting N.J.S.A. 2A:151-5, which authorizes the imposition of additional punishment when a weapon is used. State v. La Vera, 35 N.J. Super. 256, 258 (App. Div. 1955), cert. den., 350 U.S. 853, 76 S.Ct. 95, 100 L.Ed. 758 (1955). To permit imposition of an additional sentence for the same act  i.e., the possession of a weapon during the course of a robbery  would constitute an improper levy of multiple punishment for the same offense.[6]
The State attempts to distinguish the merged offenses on yet another ground. The State argues that N.J.S.A. 2A:151-41(c) and N.J.S.A. 2A:151-5 were intended to eradicate entirely different evils. The possessory offense, the State argues, was intended to prevent citizens from obtaining possession of dangerous weapons, while the armed *71 robbery provision was designed to deter criminals from using dangerous weapons in the commission of their crimes. We find this distinction to be inapplicable. Even conceding the State's position, we conclude that it does not warrant violation of the fundamental principles discussed above proscribing double prosecution for what is essentially a single criminal act or transaction.
Finally, the State contends that the two offenses do not merge since they need not occur contemporaneously but may concern different periods of time. The State argues that illegal possession of a dangerous weapon is a continuing offense which spans the entire period of defendant's possession, while the armed robbery concerns only that period of time during which the principal crime was committed. Proof of possession before and after the robbery is said to be supported circumstantially by an inference that defendant had the knife in his possession while he was in the bar. Such proof may be based solely on circumstantial evidence in some cases and may differentiate the offenses to such a degree as to allow a separate conviction for the possessory offense. However, we find that for purposes of the instant case, any such implied differentiation is far outweighed by the other considerations set forth above. This is not a case where the weapon was found to be in defendant's possession an appreciable time after the robbery or where its possession an appreciable time before the robbery is inferable. But see State v. Ortiz, supra, 124 N.J. Super. 189.
Affirmed.
For affirmance  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
For reversal  None.
NOTES
[1] The State chose not to petition for certification with respect to that portion of the Appellate Division's judgment which vacated Best's conviction for assault with a weapon.
[2] Although the prohibition against multiple punishments for the same offense is often used to bar multiplicity of prosecutions and trials, in State v. Davis, supra, we clearly held that it also applies to multiple conviction and punishment in the context of a single trial. Specifically, where one has committed a single criminal offense, he may not receive multiple convictions and sentences based on a multi-count indictment where each count therein sets forth what in essence is the same offense.
[3] Section 2.251 of the Model Jury Charges, Criminal, published by the New Jersey Supreme Court Committee on Model Jury Charges, provides as follows:

... Whether a particular knife is a dangerous knife depends upon the totality of the facts and circumstances surrounding the possession of that knife as those facts and circumstances appear from the evidence. While the concept of a dangerous knife contemplates a knife dangerous to life or human safety, one by use of which a fatal wound may probably or possibly be given, it is clear from a reading of the statute that what the Legislature has sought to make unlawful is the carrying of weapons. Consequently, if a knife is possessed by someone in a public place or public area, a determination of whether it is a prohibited act necessary depends upon a determination of the intention or attitude of the possessor toward the knife. If the purpose of carrying the instrument is its use as a weapon, the person possessing it is in violation of the law. Purpose means an intent to accomplish something, a resolve to do a particular act or to accomplish a certain thing. Whether a person regards it as a defensive weapon or an offensive weapon is of no consequence. That he regards it as a weapon is sufficient.
There is no precise standard whereby a determination can be made as to whether a given knife is a dangerous knife. Indeed, the very same knife may constitute a dangerous knife under one set of circumstances and not be considered a dangerous knife under other circumstances. Therefore, you should consider all of the attendant facts and circumstances such as the size, shape and condition of the knife, the nature of its concealment, the time, place and actions of the carrier when found in his possession. If, upon a consideration of the total circumstances you conclude that the purpose in carrying the knife was to use it as a weapon, it constitutes a violation of the law. Plainly, the possession of a knife is not automatically a criminal offense. There are various kinds of knives which are commonly carried for personal utility, convenience or some other lawful purpose. This would not be a violation of the law.
To summarize, in order to warrant a conviction, you must be satisfied beyond a reasonable doubt that defendant did in fact possess the knife in question within the legal meaning of the word "possession" and, secondly, that the knife is in fact a dangerous knife in accordance with my explanation as to what constitutes a dangerous knife.
[4] We note that our conclusion is both consistent with and supported by Section 2C:1-7 of the proposed New Jersey Penal Code, 1 New Jersey Criminal Law Revision Commission, The New Jersey Penal Code, at 7 (1971), which provides in pertinent part:

SECTION 2C:1-7. METHOD OF PROSECUTION WHEN CONDUCT CONSTITUTES MORE THAN ONE OFFENSE.
a. Prosecution for Multiple Offenses; Limitation on Convictions. When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
(1) one offense is included in the other, as defined in Subsection d of this Section;
(2) one offense consists only of a conspiracy or other form of preparation to commit the other;
* * * * * * * *
(4) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
(5) the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.
* * * * * * * *
d. Conviction of Included Offense Permitted. A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:
(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(2) it consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
(3) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission. This particular provision is now pending before the Legislature as Assembly Bill No. 3282, § 2C:1-8 and substantially mirrors the language adopted by the draftsmen of the Model Penal Code. See Model Penal Code (U.L.A.), § 1.07 (1974). See also 2 New Jersey Criminal Law Revision Comm'n, The New Jersey Penal Code, Commentary, § 2C:1-7, at 18-26 (1971).
[5] In State v. Davis, supra, this Court stated:

... [W]hile a court need not automatically accept the legislative enactment as controlling on the question of whether or not separate offenses have been delineated, the legislature may, nevertheless, within its constitutional authority, devise reasonable means to combat a social evil such as illegal trafficking in drugs and may endeavor to deter the recurrence of the proscribed conduct. Specifically, there is no question but that the legislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately. [68 N.J. at 78; citations omitted]
The Court further noted, however, that the Legislature's authority to fractionalize offenses is not unlimited:
... Of course, determination of the statute's purposes as revealed in the legislative history does not end the examination of what is the "same offense." Were the legislature, in attempting to create separate crimes, to do no more than simply apply different labels to what is in fact the same charge, it would plainly exceed its authority. [68 N.J. at 80]
[6] In passing, we note that we are not here dealing with offenses which are "part and parcel of a comprehensive strategy" to eradicate a particular social ill and that, in this respect, the instant case is distinguishable from cases involving violations of New Jersey's Controlled Dangerous Substances Act, N.J.S.A. 24:21-1 et seq. State v. Davis, supra, 68 N.J. at 78; State v. Ruiz, 68 N.J. 54 (1975); State v. Jester, 68 N.J. 87 (1975); State v. Booker, 86 N.J. Super. 175 (App. Div. 1965); cf. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).