169 N.J. Super. 377 (1979)
404 A.2d 1231
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES HOFFORD, JR., AND CRYSTAL HOFFORD, DEFENDANTS-APPELLANTS.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES HOFFORD, JR., AND CRYSTAL HOFFORD, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1979.
Decided July 5, 1979.
*380 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. Robert I. Ansell argued the cause for appellants (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys; James M. McGovern, Jr., on the brief).
Ms. Florence V. Hughes, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General, attorney).
The opinion of the court was delivered by BOTTER, J.A.D.
These appeals, which we hereby consolidate on our own motion, are taken from convictions entered upon jury verdicts in two successive trials. In the first trial defendants were convicted of child cruelty committed upon their twin daughters who were eight months of age, in violation of N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3. Defendants were also found guilty of unlawful possession of controlled dangerous substances  paregoric, which contains morphine, and oxazepam, a tranquilizing drug  in violation of N.J.S.A. 24:21-20(a)(3) and N.J.S.A. 24:21-20(a)(1). *381 However, in the first trial the jury was unable to agree on a verdict on the first count of the indictment charging defendants with manslaughter for the death of their daughter Ana. Defendants were thereafter retried on the manslaughter charge only and were convicted. Suspended prison terms, probation and fines were imposed on both defendants following the first trial. On the manslaughter convictions, James Hofford was sentenced to the Monmouth County Correctional Institution for 364 days, which was suspended except for six months, and he was placed on probation for five years. The same sentence was imposed on Crystal Hofford, except that all but four months of her sentence was suspended.
On the appeal taken from the convictions in the first trial appellants contend that (1) the failure of the prosecutor to provide the defense with the July 2, 1976 toxicological report constituted error; (2) misconduct of the prosecutor warrants reversal of the convictions, and (3) the trial judge erred in instructing the jury that it was unnecessary for the State to prove evil intent or bad motive. We find no merit in these contentions, as the brief discussion which follows will demonstrate.
Defendants admitted having given paregoric to their children. Expert testimony established that overdoses had been administered to both children. Paregoric contains morphine and morphine is a morphinan which was the cause of Ana's death. Juliet survived, however, having been given a narcotic antidote at the hospital where she was admitted in a comatose condition, unresponsive to stimuli. The jury could have inferred some guilty knowledge on defendants' part since no bottles of medicine were found by the police in their search of the premises where defendants were staying. Hofford claimed that the bottle of paregoric had been thrown out by his wife the night before the children became ill.
We turn now to defendants' first contention. The prosecutor had furnished defense counsel with a toxicological report dated June 28, 1976 well before the trial commenced. *382 A second report, dated July 2, 1976, was not furnished until the second day of trial. The prosecuting attorney represented that he himself had not received this second report and had not seen it until the day before. In any case, the record demonstrates that defendants were not prejudiced by the late receipt of this report. Defense counsel elected to proceed with the testimony of the State's expert witness without a continuance, reserving the right to produce an expert as a witness. In fact, the toxicologist who was called as a witness for the defense had the opportunity to examine both reports since he did not testify until the fifth day of the trial. Even this witness testified that the amount of morphine in Ana's blood was lethal.
Defendants complain of prosecutorial misconduct. The first instance relates to evidence that defendants were in possession of marijuana. They were charged with possession of marijuana in the indictment, but that part of the fourth count which dealt with marijuana was severed from the trial of the manslaughter and child cruelty counts. In the circumstances it would have been clearly improper for the prosecutor intentionally to interject evidence of marijuana in the trial of these other charges. As the testimony approached the proof of marijuana, however, objections were sustained, and we perceive no prejudice to defendants in this regard. We reach the same conclusion with respect to the prosecutor's use of Hofford's prior conviction for possession of marijuana for the purpose of affecting his credibility. N.J.S.A. 2A:81-12. The trial judge probably erred in permitting the question to include reference to the quantity of marijuana possessed, namely, ten pounds, but the judge did sustain defense counsel's objection to the prosecutor's improper reference to a plea bargain with regard to the dismissal of charges of possession with intent to distribute. We deplore these censurable tactics of the prosecuting attorney, but find no abuse of discretion in the trial judge's denial of the motion for a mistrial on this account.
*383 With respect to the prosecutor's comments in summation, we note, as did the trial judge, that no contemporaneous objection was made by defense counsel with respect to most of those comments. The objection was not made until the summation was completed. In any case, we find no cause for reversal based upon the prosecutor's summation. Moreover, the trial judge did charge the jury to disregard one aspect of the prosecutor's summation in which he gave a reason for a witness not testifying as to the history taken from Mrs. Hofford although there was no evidence in the record to support that comment. The trial judge also charged the jury to disregard any statements made by counsel as to the evidence in the case if those comments differed from their own recollection of the evidence. This charge sufficiently dealt with disputes between counsel as to some evidence referred to in summation.
Lastly, defendants complain of the trial judge's charge to the jury with respect to the intent required for a finding of guilty on the child cruelty counts. N.J.S.A. 9:6-3 provides that any parent "who shall abuse, abandon, be cruel to or neglectful of" any child shall be guilty of a misdemeanor. Cruelty to a child is defined in N.J.S.A. 9:6-1. It includes the infliction of unnecessary mental or physical pain or suffering upon a child, any "willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child," and "exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child."
The trial judge charged the jury that the State was required to prove that defendants, "by an intentional and wilful act of omission or commission," caused or permitted pain and suffering to be inflicted upon Ana and Juliet. He went on to say:
*384 In view of the remedial nature of this statute, evil intent or bad motive is not required to prove cruelty to a child thereunder.
The word wilfully in the context of this statute means intentionally or purposely as distinguished from inadvertently or accidentally.
Hence, the statute does not require proof that the defendants acted with an evil intent and knew that harm would result from their conduct to satisfy the burden of proof cast upon the State in this case, with respect to this element.
We find no error in this portion of the charge. State v. Rivera, 133 N.J. Super. 453, 455-456 (App. Div. 1975); State v. Burden, 126 N.J. Super. 424, 426-427 (App. Div.), certif. den. 65 N.J. 282 (1974).
We now turn to the second appeal taken from defendants' convictions for manslaughter. On this appeal defendants make the following contentions: (1) the retrial on the manslaughter charge was barred by the doctrines of double jeopardy, res judicata and collateral estoppel; (2) the charge to the jury regarding their consideration of Ana's condition was improper; (3) evidence concerning the medical treatment of Juliet was improperly admitted, and (4) the sentences imposed upon defendants were excessive and an abuse of discretion.
Defendants' first contention is refuted by prevailing law. State v. Roller, 29 N.J. 339, 344 (1959), holding that the inability of the jury to agree upon a verdict on a particular charge does not preclude retrial of defendant on that charge. In this case conviction on the lesser charge of child cruelty did not imply acquittal on the charge of manslaughter. In that respect we find defendants' reliance upon Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), misplaced.
We find no merit in defendants' second contention regarding that portion of the trial judge's charge to the jury which dealt with proximate cause of death. The jury was told that the State had the burden of proving that defendants' conduct was the proximate cause of Ana's death. In doing so the trial judge added, "Again, I caution you here *385 that mere sickness or weakness of the alleged victim causing succumbing [sic] to death which might not have occurred if that person had been in excellent health is not a legal defense or does not remove or lessen criminal responsibility for causing death." This is a correct statement of the law. State v. Loray, 41 N.J. 131, 140 (1963); see State v. Thomas, 118 N.J. Super. 377, 380 (App. Div.), certif. den. 60 N.J. 513 (1972). We note that in this second trial a defense expert, a toxicologist, again testified that the quantity of morphine found in Ana's body was lethal. We do not see, as defendants contend, that this portion of the charge lessened the State's burden of proving defendants' criminal responsibility. The judge had charged the jury that the State must prove that defendants' act of administering paregoric was grossly negligent, defined as "reckless and wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause death."
Defendants also complain about the admission of testimony concerning the treatment of Juliet with a narcotic antagonist or antidote to which she responded favorably. The trial judge instructed the jury to limit its consideration of this evidence to the purpose for which it was admitted, namely, as to the State's contention that the administration of paregoric was not inadvertent, accidental or unintentional. In the circumstances of this case we find no error in the admission of this evidence as it tended to prove the same course of conduct with respect to both daughters at the same period of time. Evid. R. 55; State v. Wright, 66 N.J. 466 (1975), rev'g on dissenting opinion, 132 N.J. Super. 130 (App. Div. 1974) see State v. Atkins, 78 N.J. 454 (1979).
As for defendants' final contention, we find no abuse of discretion in the sentences imposed. See State v. Knight, 72 N.J. 193 (1976). However, following the jury verdict in the second trial, the convictions and sentences imposed on the second count charging child cruelty of Ana should have been merged into the convictions for manslaughter since the same conduct resulted in both convictions. See State v. *386 Hubbard, 123 N.J. Super. 345, 352 (App.Div.), certif. den. 63 N.J. 325 (1973); cf. State v. Best, 70 N.J. 56 (1976). Accordingly, we vacate the convictions and sentences imposed on the second count of the indictment following the first trial and we remand the case to the trial court solely for the purpose of entering an amended judgment.
This brings us to the issue raised by Judge Seidman in his dissent. Defendants did not contend that the evidence was insufficient to warrant the manslaughter convictions, so we need not elaborate on the facts tending to show defendants' culpability. We note merely that defendants' guilt for manslaughter is not diminished by their lack of intention to kill their daughter. Otherwise they would have been charged with murder. We mention this solely to emphasize that the jury verdict in the second trial must be accepted as adequately supported by the evidence. It should not be viewed as a compromise verdict because the jury was forced into an "all or nothing" verdict. The first jury had the choice to convict or acquit on each charge. The first jury did not acquit defendants of manslaughter despite their convictions on the child cruelty charges. Thus, there is no question here of a compromise verdict in either trial.
Judge Seidman's view is that "the child cruelty offense should have been given to the jury, not as a distinct and separate crime but as a lesser included offense of manslaughter." Presumably the effect of this approach would be to force a conviction or acquittal on manslaughter before the charge of child neglect is considered. In that way a conviction for manslaughter would end the jury's deliberations, but the child cruelty charge could not be considered unless an acquittal on manslaughter is first voted.
This concept is novel and no supporting authority has been cited. Applied as a general principle it would introduce difficult procedural problems that are not warranted. In effect it would require trial judges to pass on various merger possibilities before a verdict is reached on multiple charges *387 arising out of a single criminal episode, creating unnecessary opportunities for error and confusion for juries.
Understandably, a conviction for one degree of crime, such as larceny or murder, should preclude retrial on a higher degree of the crime when the first jury was given a choice of convicting on one degree or another. See Green v. United States, supra, where the first jury convicted defendant of second degree murder but its verdict was silent as to first degree murder. There, the conviction was reversed on appeal because it was not supported by evidence, and defendant was retried for first degree murder to which he asserted the defense of former jeopardy. Convicted of first degree murder, he appealed to the United States Supreme Court. That court held that the conviction for second degree murder was "an implicit acquittal on the charge of first degree murder." 355 U.S. at 190, 78 S.Ct. at 225, 2 L.Ed.2d at 206. In the first trial the jury was authorized to find defendant guilty of either first degree murder (felony murder) or second degree murder. The court distinguished Green from the case in which the jury's failure to agree upon a verdict prevents completion of the first trial. 355 U.S. at 188, 78 S.Ct. at 223, 2 L.Ed.2d at 204-205.
In the case at hand the convictions for child cruelty in the first trial did not imply innocence on the manslaughter charge. The jurors reported that they were hopelessly deadlocked on the manslaughter charge but did reach a verdict on the child cruelty and unlawful drug possession charges. This verdict was received without objection, and a mistrial was declared on the manslaughter count.
Cases in which multiple counts charging separate, distinct crimes arising out of one criminal episode are legion, and these are traditionally given to the jury for separate verdicts on each count although convictions on some counts may be merged later into others. State v. Richardson, 73 N.J. 82 (1977), and State v. Best, supra, are but two examples. In the latter case, 70 N.J. at 62, the court approved the principle stated in State v. Hill, 44 N.J. Super. 110, 112 (App.Div. *388 1957), and State v. Jamison, 64 N.J. 363, 380 (1974), that "A prosecution for any part of a single crime bars any additional prosecution or sentence for the whole crime or any other constituent element of the whole crime." Yet, in considering the issue of merger of offenses, the Supreme Court stated in State v. Best, supra, 70 N.J. at 62, that it has "eschewed a mechanical application of the traditional `offense-defining' criteria for sameness" which are contained in the all-too-narrow `same evidence,' `same transaction,' or `lessor-included offense' tests." Curiously, in that case defense counsel moved for a merger of different charges (possession of a dangerous knife and assault with an offensive weapon) at the end of the State's case so that only the armed robbery charge would be presented to the jury. The request was denied. However, this issue was not discussed in the Supreme Court's opinion, and the opinion of the Appellate Division was not published.
We do not reject our colleague's view because it is novel. We see no purpose to be served by that approach. We see no purpose in speculating on the result that would have been reached if the second jury had been presented with the child cruelty charges as well as the manslaughter charge. There is no reason to believe defendants were prejudiced by the "all-or-nothing" verdict in the second case. The lesser-included offense doctrine serves several purposes, State v. Saulnier, 63 N.J. 199, 205 (1973), not simply the possibility that a jury will convict on the lesser offense only. Thus, we find no justification for holding that defendants must be retried on the manslaughter and child cruelty charges because they were tried for manslaughter without presenting the child cruelty charges to the same jury.
Affirmed, as modified, and remanded solely for the purpose of entering an amended judgment reflecting the merger of the convictions on count two into count one by vacating the convictions and sentences on count two.
*389 SEIDMAN, J.A.D. (dissenting in part).
I differ from my colleagues only with respect to defendants' conviction at the first trial of child cruelty to their infant daughter Ana, and at the second trial of involuntary manslaughter of that child. While the issue I perceive in the case was not directly raised below or in the briefs on appeal, I deem it of sufficient overriding significance to require us to address it on our own motion. Cf. State v. Christener, 71 N.J. 55, 63 (1976). It is my view that the child cruelty conviction should be vacated, the manslaughter conviction reversed, and both matters remanded for a new trial.
These defendants, parents of twin infants Ana and Juliet, were indicted for (1) the manslaughter of Ana, (2) child cruelty to both Ana and Juliet, and (3) unlawful possession of controlled dangerous substances: marijuana, paregoric and oxazepam. The marijuana charge was severed prior to trial. At the first trial defendants were found guilty of child cruelty as to both twins and of unlawful possession of the two drugs. The jury could not reach a verdict on the manslaughter count and a mistrial was declared as to it. At the second trial, limited, of course, to the manslaughter charge, defendants were found guilty of that offense.
The Hoffards and their nine-month-old twins came to New Jersey from their place of residence in Jamestown, Tennessee, to visit his parents in Wall Township. They arrived after an arduous 19-hour drive and, not finding the parents at home, went to a neighbor's house to spend the night. To soothe the infants, who were teething and also restless after the long and tiring trip, Mrs. Hofford administered to each a quantity of paregoric, two tablespoonsful, according to a response she allegedly gave to a physician after they became ill, or, as she testified at the trial, a level teaspoonful. In any event, both children showed signs of respiratory distress the next morning and they were rushed to a hospital. Juliet recovered; the other infant died from what an autopsy disclosed to be an overdose of morphinans.
*390 Sufficient medical evidence was adduced by the State from which a jury could have found beyond a reasonable doubt that the children were made ill by the drug and the death of Ana resulted therefrom. The complicating factor is the submission of the two offenses to the jury at the first trial with instructions to find guilt or innocence on each, and the jury's finding of guilt as to child cruelty but disagreement with respect to manslaughter.
I am satisfied that in the circumstances of this case, the child cruelty offense should have been given to the jury, not as a distinct and separate crime but as a lesser included offense of manslaughter. See State v. Wright, 132 N.J. Super. 130, 147, 150 (App.Div. 1974), rev'd on other grounds on dissenting opinion, 66 N.J. 466 (1975). The charges of manslaughter and child cruelty clearly arose out of a single incident: the administration of paregoric. Once the jury determined that the child's death was caused by a culpable act or omission on the part of the parents, the remaining issue was whether their conduct was of such nature as to constitute manslaughter, or, if not, whether it was nevertheless sufficient to establish cruelty toward the child within the meaning of N.J.S.A. 9:6-1 and 9:6-3. Cf. State v. Pickles, 46 N.J. 542, 555-556 (1966). This called for a verdict on one or the other, but not both.
Had the jury found defendants guilty of both offenses at the first trial, there would be no problem, for in that event the child cruelty conviction would have merged into that for manslaughter, and only one sentence imposed on the manslaughter conviction. Here, each defendant was given a suspended two to three-year sentence on the child cruelty count, placed on probation for five years and fined $500. After the second trial, Hofford was additionally sentenced to a jail term of 364 days, all but six months of which was suspended; and Mrs. Hofford received a like jail term, all but four months being suspended. The State suggests that defendants were not prejudiced by this subsequent conviction *391 for manslaughter, since, if it is upheld, there will be a merger. I cannot agree that there was no prejudice. At the earlier trial both counts were before the jury, and instructions were given on the essential elements of each offense. The jury could have found defendants not guilty of either, or guilty of one or the other (or both, on the charge as given). A choice of verdicts was thus available. It is apparent that although the jury was satisfied a case of child cruelty had been established beyond a reasonable doubt, they could not reach unanimity as to any greater culpability on the part of defendants.
But at the second trial the only choice allowed the jury was a verdict of either guilty or not guilty, despite evidence from which the jury could rationally have found the circumstances to be such that defendants' culpability, if any, amounted only to child cruelty, as was the case at the first trial, and not to manslaughter. The jury was thus placed in an "all or nothing" situation in which a finding adverse to defendants could obviously result, as it did here, only in a verdict of guilty of manslaughter. Cf. State v. Lopez, 160 N.J. Super. 30, 36 (App.Div. 1978). I am convinced that depriving defendants of their right to have the jury consider the lesser included offense constituted plain error, requiring vacation of the child cruelty conviction, reversal of the manslaughter conviction, and a remand for a new trial limited to those charges.