174 N.J. Super. 402 (1980)
416 A.2d 944
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH STENSON, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided May 13, 1980.
*403 Edward J. DeFazio, Assistant Prosecutor, for plaintiff (James T. O'Halloran, Prosecutor of Hudson County, attorney).
Peter R. Willis for defendant (Willis & Maslo, attorneys).
BILDER, J.S.C.
Following a five-week jury trial, defendant was convicted of 16 counts, including charges of willful, deliberate and premeditated murder, felony murder in connection with a robbery, felony murder in connection with a rape, armed robbery, rape, and assorted associated charges, including assault and possession of weapons. All of the charges relate to a single episode insofar as they relate to the same victim, but relate to more than one *404 episode in that they relate to a number of separate and distinct acts. At issue before the court is the question as to which counts merge.
During the trial the jury was presented with two versions of the events which formed the basis of the charges against defendant. Included in the State's evidence was an eight-page statement made by defendant at the time of his arrest which set forth a description and chronology of events with exquisite detail. This statement, corroborated with numerous real and circumstantial evidence, formed the basis of the State's case and, if believed, contained within it proof of each and every element of each and every count of the indictment.
At the trial the jury heard a different version from defendant. In his testimony defendant attributed all of the crimes charged in the indictment to other named individuals, although in the course of his in-court statement he openly admitted the existence of facts which would warrant a finding of guilty to the crime of felony murder in connection with robbery on the basis of his own participation as an aider and abettor.
By finding defendant guilty of all 16 counts in the indictment, the jury accepted defendant's original eight-page statement to the police at the time of his arrest as the true and correct recital of the events which led to the death of the victim, Mrs. Pecker.

I
At about 1 p.m. on January 9, 1979 Laura Pecker, a 45-year-old married woman, entered a one-family residence at 20 Clendenny Avenue, Jersey City, where defendant Joseph Stenson, age 20, resided with his mother. Mrs. Pecker worked for the Avon Company and came to the Stenson home in the apparent belief that she was soliciting a prospective seller of Avon products. Stenson, a nighttime security guard who lived with his mother, a Staten Island hospital employee, described the enticement thusly:
I called the number and spoke to a woman and told her my name was Miss Tyler and I wanted to sell Avon Products. She said sure, I will get back to you. Then she sent me one of them small postcards telling me to come to some place and if *405 I couldnt make it they would call me back after the holidays. She did and said she would come to my house at 1 p.m. I cant remember the day or the date. But that is the day that she came.
When she arrived at the house that day he let her in and after a short charade in which he said he was going to get his mother, he seized a knife and told her he wanted money. Thereafter, he hit her, stripped her, raped her and then struck her "about twelve times" with a stick which he described as being a bit thicker than a mop handle and about a yard long, bludgeoning her to death. His description of this beating, which resulted in multiple skull fractures, subdural and epidural hematomas, and lacerations and contusions of the brain, is fully and completely corroborated by the photographs of the victim which show the destruction of her skull, bruises to her breasts, and bruises on her arms where she sought vainly to protect her head against the vicious attack. Following the rape, the theft and the murder, Stenson wrapped the body in sheets, carried it and placed it in the rear of Mrs. Pecker's automobile, abandoned the car some distance away and returned to clean up his living room in what turned out to be a vain effort to erase the evidence of the brutal scene which had shortly before been enacted.[1]

II
In considering the question of merger the polestar is the constitutional principle that no person shall be punished twice for the same act. See State v. Best, 70 N.J. 56, 60-61 (1976); State v. Davis, 68 N.J. 69, 76-77 (1975). A parallel principle is the theorem that acts which may in a constitutional *406 sense be separate and distinct should not be treated as such unless the Legislature has intended such treatment. See State v. Davis, supra at 77-80. It is in the context of these principles that the critical question before this court  whether the convictions of robbery and of rape merge into the convictions of felony murder  must be examined.
This merger problem cannot be solved by the application of an algebraic formula which would blindly merge the so-called "lesser" offenses into the "greater." See State v. Best, supra, 70 N.J. 56, at 62-63. Each determination must be made on the special facts of the particular case. The result must satisfy not only the constitutional limitations but also the social imperatives. Recognition must be given to a general sense of fairness and the public's right to the fulfillment of its reasonable expectations with respect to the manner in which these offenses are dealt with. Ibid.
In the instant case an examination of the narrative as set forth by Stenson in his eight-page confession discloses that there were essentially three separate and distinct acts: a killing, a rape and a robbery. Each of these are acts which have been dealt with separately and extensively by our Legislature. N.J.S.A. 2A:113-1 et seq., N.J.S.A. 2A:138-1 et seq., N.J.S.A. 2A:141-1 et seq. Indeed, each of these represent conduct which society has dealt with as separate and distinct offenses since the earliest history of mankind. A conviction of each of these gives rise to legislative and societal expectations of serious punishment. See State v. Best, supra.
The nub of the problem confronting the court arises in the convictions of felony murder and the perplexity arises from the possibility that the felonies might as a matter of law merge into the felony murders, thus losing their identity in the single killing for which there can be but a single punishment.
As suggested by the court in State v. Best, the solution to the puzzle lies in an analysis of the particular facts in this case. Although the jury found defendant guilty of felony murder  which might under other circumstances require a *407 merger of the killing with the underlying felony, see State v. Hubbard, 123 N.J. Super. 345, 352 (App.Div. 1973)  by its finding of an intentional, deliberate and premeditated murder, the jury rendered the felony murder verdict surplusage. Felony murder depends upon a theory of transferred intent. The intent to commit the felony is enough even though there is not an intent to kill. See State v. Madden, 61 N.J. 377, 384 (1972). The malice necessary to support first degree murder is implied from the robbery  or the rape. In the instant case implied malice is irrelevant; actual malice has been found to exist.
From an examination of the facts I find that the rape and the robbery were acts separate and distinct from the intentional, deliberate murder of the victim. Therefore, they do not merge with the felony murder convictions and should be separately dealt with.

III
The defendant will be sentenced for the willful, deliberate and premeditated murder, for the rape and for the robbery. Counts 3, 4, 5 and 6 for felony murder are surplusage and are vacated.
NOTES
[1] Mrs. Pecker's body was found wrapped in sheets marked with "New York Health and Hospital Corporation" and her face was covered with a Daily News, upon which was written in ink "Willie Lyons-Dorothy Thompson." It was these two clues combined with an astute assumption that Mrs. Pecker's position as an Avon representative had a relationship to the case that led the police to discover the identity of her attacker. Included in Mrs. Pecker's Avon diary was the name "Tyler" and the address 20 Clendenny Avenue. When the police visited 20 Clendenny Avenue they saw a pile of old Daily News with "Willie Lyons-Dorothy Thompson" written thereon. When they further learned that Stenson's mother worked for the New York Health and Hospital Corporation, they knew the solution to the crime was at hand.