245 N.J. Super. 53 (1990)
583 A.2d 1145
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHARLES COLBERT AND JACK COLBERT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1990.
Decided October 11, 1990.
*54 Before Judges J.H. COLEMAN, ASHBEY and LANDAU.
Larry R. Etzweiler, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney; Larry R. Etzweiler of counsel and on the brief).
Michael J. Marucci, Assistant Deputy Public Defender, argued the cause for respondents (Wilfredo Caraballo, Public Defender, attorney; Michael J. Marucci of counsel and on the brief).
Opinion of the court was delivered by LANDAU, J.A.D.
This appeal which we consider on leave granted to the State challenges the dismissal of an August 1986 State Grand Jury indictment by the Superior Court, Law Division, Somerset County, following motions by defendants-respondents Charles and Jack Colbert which invoked principles of mandatory joinder (N.J.S.A. 2C:1-8b; R. 3:15-1(b)), double jeopardy and impermissible fractionalization of offenses. The defendants had previously been tried and convicted in a January 1986 trial on an Essex County indictment returned in October 1984.
The 31-count 1984 indictment against Charles Colbert, Jack Colbert and Signo Trading Co. alleged a conspiracy and overt acts "on or about or before the 11th day of April, 1983," the date of a massive Newark warehouse fire which resulted in discovery by law enforcement and environmental agencies that *55 these defendants had been transporting and storing hazardous waste without authorization from the Department of Environmental Protection. The conspiracy alleged in that indictment was:
1. To knowingly and unlawfully store and/or transport hazardous waste without authorization from the Department of Environmental Protection, in violation of N.J.S. 13:1E-9g(3).
2. To recklessly create a risk of widespread injury or damage, in violation of N.J.S. 2C:17-2c.
Various specific overt acts of knowing and unlawful storage and transportation of such wastes (N.J.S.A. 13:1E-9g(3)) and reckless storage and transportation of such wastes (N.J.S.A. 2C:17-2c) were set forth. As above noted, none of the charges involved post-April 11, 1983 actions.
Trial on this indictment commenced on January 13, 1986 and ended on February 22, 1986, with the conviction of Charles Colbert on 10 counts including the conspiracy. Jack Colbert was convicted on 14 counts including conspiracy.
On January 16, 1986, an investigative State Grand Jury convened for the expressed purpose of investigating the possibility of further criminal activities by defendants following the 1983 fire.
On August 14, 1986 the State Grand Jury returned the indictment which is the subject of this appeal against the respondents Colbert and several companies which they controlled. The 1986 indictment took note of the pre-April 1983 acts, designating them as a separate "episode." It alleged a conspiracy described as follows:
[C]ommencing on or about April 12, 1983, on an exact date unknown to the Grand Jurors, and continuously thereafter, until in or about July, 1986, on an exact date unknown to the Grand Jurors, at the Town of Somerville, in the County of Somerset, at the City of Trenton, in the County of Mercer, at the City of Newark, in the County of Essex, at the City of Elizabeth, in the County of Union, at the City of Paterson, in the County of Passaic, at the Town of Saddlebrook, in the County of Bergen, at the Town of Edgewater, in the County of Bergen, at the Town of Mount Vernon, in the State of New York, and at the City of Cleveland, in the State of Ohio, elsewhere, and within the jurisdiction of this Court, with the purpose to promote and to facilitate the object of the *56 conspiracy charged herein, did conspire, confederate and agree to unlawfully abandon, release, generate, transport and store hazardous wastes, toxic pollutants and other harmful and destructive substances, and to otherwise violate the laws of this State.
Among the means of promoting and facilitating the aforesaid object, the conspirators did agree that:
1. One or more of them would engage in conduct which constitutes the crimes of: releasing or abandoning harmful and destructive substances, including hazardous wastes and toxic pollutants, contrary to N.J.S.A. 2C:17-2a; transporting hazardous waste to a facility or place which does not have authorization from the Department of Environmental Protection to accept such waste, contrary to N.J.S.A. 13:1E-9g(1); generating and transporting hazardous wastes to a facility or place which does not have authorization from the Department of Environmental Protection to accept such waste, contrary to N.J.S.A. 13:1E-9g(2); transporting hazardous waste without authorization from the Department of Environmental Protection, contrary to N.J.S.A. 13:1E-9g(3); storage of hazardous waste without authorization from the Department of Environmental Protection, contrary to N.J.S.A. 13:1E-9g(3); causing or permitting hazardous waste to be transported or received without completing and submitting a hazardous waste manifest contrary to N.J.S.A. 13:1E-9i; and, creation of a risk of widespread injury or damage, contrary to N.J.S.A. 2C:17-2c; ...
The State Grand Jurors also specifically found that a number of the locations which were the subject of the conspiracy charged came into existence after the April 11, 1983 fire as a means of purporting to comply with a DEP ordered removal and cleanup of chemicals which had been stored in drums at the Newark warehouse, and that defendants' employees had been instructed to remove or paint over labels which could identify contents of the drums as hazardous wastes, including drums which had already been labeled as waste by the DEP during their post-fire remediation efforts.
The State Grand Jury indictment went on to find and charge that thousands of such drums were unlawfully moved from Newark to different warehouse locations in Somerville, Edgewater, and Elizabeth. Further, the 1986 indictment set down a number of overt acts which occurred after the 1983 fire involving other instances of unlawful transportation, abandonment, release or storage of hazardous, toxic or harmful substances at various locations within and without the State which did not arise out of efforts to dispose of the Newark drums. The time *57 period covered by the State Grand Jury indictment culminated in July 1986, when the Colberts were incarcerated on Federal charges, and five months after their trial on the 1983 Essex County indictment.
When the Colberts moved in 1989 to dismiss the 1986 State Grand Jury indictment, the trial judge determined in a written opinion that defendants had met the three-prong burden established by N.J.S.A. 2C:1-8b and R. 3:15-1(b) and that the offenses charged in the 1986 indictment should have been joined with those charged in the 1984 indictment which did not go to trial until January 1986. The trial judge also concluded that the later indictment "must be dismissed because the defendants, having been tried and punished for crimes arising from the same criminal conduct alleged in the State's complaint, cannot be put in jeopardy a second time." (Emphasis supplied).
Our review requires, therefore, that we consider the three elements or prongs of the mandatory joinder provisions, mindful that joinder is required only if all three elements are satisfied. Putting it another way, the absence of an element means that joinder is not compelled. Further, we must consider whether the indictment charged the "same criminal conduct" for jeopardy purposes, as well as under joinder analysis.

MANDATORY JOINDER
The rationale underlying the mandatory joinder principle embodied in N.J.S.A. 2C:1-8b and R. 3:15-1(b) is one of fairness and fulfillment of reasonable expectations. See State v. Yoskowitz, 116 N.J. 679, 704-707, 563 A.2d 1 (1989) and State v. Pillot, 115 N.J. 558, 567, 560 A.2d 634 (1989). In Pillot, offenses which were "factually distinct in terms of time, place, and victim, if not manner" were held not subject to mandatory joinder, because they failed thereby to qualify as an "episode."
R. 3:15-1(b) provides:
(b) Mandatory Joinder. Except as provided by R. 3:15-2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the *58 same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.[1]
Thus, the three necessary elements are that the offenses (1) must be based on the same conduct or arise from the same episode; (2) must be known to the appropriate prosecuting officer at the time of the commencement of the first trial; and (3) must be within the jurisdiction and venue of a single court. Moreover, an exception set forth in R. 3:15-2(b) points up judicial and legislative recognition (See N.J.S.A. 2C:1-8c) that there may be instances where the degree of prejudice to the State or defendant is such that separate trials of certain counts may be warranted.
In the present case, we are satisfied that the necessary element of same conduct or same episode is not present, and that the circumstances do not warrant a finding that fairness and fulfillment of defendants' reasonable expectations require joinder.
Certain guidelines have been provided to us. In State v. Best, 70 N.J. 56, 356 A.2d 385 (1976), a merger case, the Supreme Court noted that we should employ a flexible approach which considers the nature of the offenses, the time and place of each offense, whether the evidence submitted as to one count of an indictment is necessary and/or sufficient to sustain a conviction under another count, whether one offense is an integral part of the larger scheme, intent of the accused and the consequences of the criminal standards transgressed. Best, 70 N.J. at 63, 356 A.2d 385. The Best court also recognized that emphasis should be placed on underlying policies rather than on technisms, and that primary consideration should be given to factors of fairness and fulfillment of reasonable expectations. *59 More recently, in State v. Pillot, supra, the Supreme Court re-echoed the flexibility approach, as well as emphasizing that the mere fact that offenses might be the subject of a permissible joinder does not compel joinder under the rule. Pillot, 115 N.J. at 567, 560 A.2d 634.
In State v. Di Ventura, 187 N.J. Super. 165, 172, 453 A.2d 1354 (App.Div. 1982), we held that the "same conduct" must mean "identical conduct" and that under N.J.S.A. 2C:1-8 that term referred to a single act which results in the commission of more than one offense.
Here the conspiracy and the overt acts charged were generally separate and different in time and in place from those included in the first indictment. To the extent that the Thomas Street location was mentioned, it arose from the assertion that when defendants' criminal scheme was discovered after the 1983 fire by DEP personnel, defendants commenced a new, though related, scheme to escape apprehension by committing further, and different, criminal acts. Those further acts placed at risk additional potential victims in new locations.
In State v. Gregory, 66 N.J. 510, 333 A.2d 257 (1975), the Supreme Court defined the word "episode" to mean, "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." Id. at 520, 333 A.2d 257. We read this, together with the "flexible" standard terminology in the more recent Supreme Court cases, to afford to the prosecutor a certain degree of court-monitored discretion to determine whether to join offenses for a single trial, even though part of a larger or more comprehensive series. The offenses asserted in the 1986 indictment are readily capable of identification as events which are, in the words of Gregory, "distinctive and apart although part of a larger or more comprehensive series."
Were defendants correct in their analysis of the mandatory joinder rule, they could, with the blessing of the court, continue *60 indefinitely to postpone trial by committing like criminal offenses, in pursuit of their long-term criminal conspiracy, after apprehension.[2] This would require continual postponement of each new trial date, because, as of the trial date, law enforcement officials would have become aware of the further offenses. We hold that this consequence is neither a fair nor reasonable expectation as to that kind of contumacious conduct. Such temporally extended, separate and diverse criminal acts are not properly characterized as part of the same criminal episode; certainly not after the initial apprehension. Paraphrasing Chief Justice (then Justice) Rehnquist's comments in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), if one wishes to pay the piper only once, he should stop dancing when the music stops. See Garrett, 471 U.S. at 790, 105 S.Ct. 2407, 85 L.Ed.2d at 779.
Our conclusions respecting the same-conduct-and-episode prong make it unnecessary to consider the other elements of R. 3:15-1(b) and N.J.S.A. 2C:1-8b joinder.
We add our recognition that in multi-count cases as complex and difficult of proof as those involved in the subject indictment, the prejudice to the State which results from further trial delay and further opportunity for continuing criminal endeavor is a consideration which should not be ignored. See R. 3:15-2(b).

DOUBLE JEOPARDY
There has been no double jeopardy violation. Our conclusion is based on the language of the second indictment, which when compared to the 1983 indictment, shows facially that the State Grand Jury alleged different offenses, occurring at different times, and affecting different victims, in different places. Evidence utilized in the prosecution of the first indictment was neither the same nor the sole evidence which would *61 have been used in the second prosecution. See State v. Yoskowitz, 116 N.J. at 692-695, 563 A.2d 1. It is clear that there was a potential for substantially different harms or evils in the sense that new hazards were created and new persons put at risk. Different events were involved.
As noted in State v. Yoskowitz, 116 N.J. at 702, 563 A.2d 1, double jeopardy analysis involves a consideration of the elements of the charged offenses and the evidence supporting them. Evidence to sustain the charges in the 1986 indictment would necessarily have been markedly different than that required to prove the 1983 indictment charges. We reject the double jeopardy argument as clearly without merit. R. 2:11-3(e)(2).

CONCLUSION
We reverse the order of dismissal. The indictment is restored, and the matter remanded for trial.
NOTES
[1] The rule was amended effective January 1, 1988, before the order of dismissal but after the 1986 indictment. However, the changes merely reflect an already firm practice of interpreting identically the parallel mandates of the statute and rule.
[2] Assuming that bail had been posted.