# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0332-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.A.,

     Defendant-Appellant,

and

W.M.,

     Defendant.

_____

IN THE MATTER OF S.G. and C.M.,

     Minors.

_____

Submitted September 9, 2019 – Decided September 18, 2019

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FN-21-0174-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Sarah E. Chambers, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Amy M. Mc Kinsey, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant K.A.[1] appeals from the Family Part's October 16, 2017 order finding that she abused or neglected her six-year-old daughter S.G. and infant son C.M. under N.J.S.A. 9:6-8.21(c) (Title Nine) based on events that arose from her being arrested after police found her smoking marijuana at night in a car with a friend while her two children were in the vehicle's back seat. On appeal, defendant argues that plaintiff, the Division of Child Protection and Permanency (Division), failed to prove by a preponderance of the evidence that her conduct

---

[1] To protect privacy interests and for ease of reading, we use initials for the parents and children. R. 1:38-3(d)(12).

was "willful and wanton" or that it "harmed the children or placed them in imminent danger." The Division and the children's Law Guardian disagree and contend that the Division met its burden. We affirm, substantially for the reasons stated by Judge Haekyoung Suh in her comprehensive oral decision placed on the record on the same date she entered the order under appeal.

The facts as found by Judge Suh are summarized as follows. Defendant's daughter was born in May 2010 and her son in February 2016. The children lived with their mother at their maternal grandmother's home. The daughter's father is unidentified and the son's father is defendant W.M., who was incarcerated at the time of the subject incident.

Between 2012 and 2016, the Division received several referrals that alleged defendant was not properly caring for her daughter and had used marijuana while pregnant with her son. None of the allegations were substantiated by the Division, although defendant admitted to smoking marijuana.

On June 16, 2017, at approximately 10:30 p.m., defendant was sitting in her parked car with her friend and her children. The vehicle was parked in a parking lot at a public park after the park had closed for the day. Defendant's friend was in the driver's seat and her children were secured in their car seats in

3

the back seat of the vehicle, watching a video, while defendant and her friend were smoking marijuana in the front seat. The windows in the front of the car were lowered, but the windows in the back were closed.

While parked in the vehicle, defendant and her friend were approached by local police. An officer observed that the vehicle "was visibly filled with smoke," smelled of marijuana, and he saw a "blunt" in the car while speaking to defendant and her friend. The officer also observed that the children were fine and that defendant did not appear to be under the influence of any substance. Defendant cooperated with the police and turned over two small bags that contained marijuana.

The police proceeded to arrest defendant and her friend in the children's presence. According to the officer, the older child began to cry "hysterically and scream[ed] that she did not want her mommy arrested." Defendant called her mother to pick up the children at the park before the police removed defendant from the scene.

The police notified the Division about the incident and in response, Division caseworkers went to the grandmother's home shortly after midnight on June 17 to observe the children and interview the older child and their grandmother. The children, who were still awake, appeared to be fine. The

older child informed the caseworker that her mother and her friend were smoking "weed" in the car and that she became upset and cried, "really badly," when the police arrested her mother. The older child also described what a "blunt" was and otherwise indicated familiarity with her mother's use of marijuana.

As to the grandmother, the caseworker reported that she observed the woman drinking what the caseworker believed to be alcohol. Upon further investigation, the caseworker determined that the infant son had not been fed and that his diaper was not changed. The grandmother was neither cooperative in attending to the children nor responsive to the caseworker's concern about the children, and she was resistant to having the children placed with her or having other relatives care for them.

Division caseworkers remained at the home waiting for defendant to be released from jail and return to her children. While they continued to wait for defendant, they talked to the grandmother about the children's placement and realized that the grandmother had been substantiated in 1995 for abusing defendant as a child and therefore was not a viable option for her grandchildren's placement.

5

The police notified the Division that defendant was being released from jail at approximately 1:00 a.m. Rather than returning home to her children, defendant met her same friend and they went to a bar. At approximately 2:00 a.m., one of the caseworkers was able to contact defendant, who advised that she would be home within thirty minutes. She finally returned home at approximately 3:20 a.m.

Upon defendant's arrival, a heated argument ensued between her, her sister, and her mother that resulted in the police being called. In a conversation with the police, defendant admitted that she made a mistake by smoking marijuana in a car with her children present. She also expressed concern about her mother being considered as a placement for the children. According to testimony from one of the caseworkers, defendant stated her mother was "horrible" and that she did not "care where [her] kids [went], as long as [they were not left] with her." During the entire episode, neither defendant nor her mother attended to or cared for the children who were exposed to their fight and the return of the police.

After the caseworker talked to defendant about leaving her mother's apartment and the need for her to find a placement for the children, it became clear that defendant could not identify an alternate caregiver for the children,

and her mother could not and would not care for them. As a result, the Division conducted an emergency "Dodd" removal[2] of the children on June 17, 2017, and initially placed them with a non-relative resource family before later placing them with a maternal cousin.

The Division filed its complaint on June 19, 2017, and a factfinding hearing was held on October 16, 2017. A caseworker was the only witness who testified for the Division. Defendant did not attend the hearing and no one testified on her behalf.

After considering the testimony and documents admitted into evidence, Judge Suh determined that the Division proved by a preponderance of the evidence that defendant abused or neglected her children. In a detailed oral decision, the judge found that under N.J.S.A. 9:6-8.21(c)(4), defendant exposed the children's "physical, mental, or emotional condition [to being] impaired or [placed them] in imminent danger of becoming impaired as the result of [defendant's] failure . . . to exercise a minimum degree of care." The judge relied upon defendant's smoking marijuana in her children's presence inside a

---

[2] A Dodd removal is an emergency removal of a child from a parent's custody without a court order, as authorized by the Dodd Act. See N.J.S.A. 9:6-8.29; see also N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 215 n.2 (App. Div. 2017).

A-0332-18T3

smoke-filled car, the children's trauma in observing their mother's arrest and removal by police, defendant's placing her children with her own mother who she believed was a danger to the children, and with that belief, choosing to go out drinking with her friend upon her release from jail instead of going home to care for her children.

Afterward, the children remained with their maternal cousin, who wished to adopt them. In May 2018, the judge approved the Division's permanency plan for termination of parental rights and for the cousin to adopt. In August, the judge dismissed the Title Nine action and the Division filed a guardianship complaint. This appeal followed.

Our standard of review on appeal is well-settled. We are bound by the Family Part's factual findings if supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577-78 (App. Div. 2010). We accord particular deference to the family court's factfinding because of the court's "special expertise" in family matters, its "feel of the case," and its opportunity to assess credibility based on witnesses' demeanor. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)); Cesare v. Cesare, 154 N.J. 394, 412 (1998).

Under Title Nine, an abused or neglected child is:

> [A] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4).]

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). The statute requires a court to consider harm or risk of harm to the child, as opposed to the intent of the abuser, because "[t]he main goal of Title [Nine] is to protect children 'from acts or conditions which threaten their welfare.'" G.S. v. Dep't of Human Servs., 157 N.J. 161, 176 (1999) (quoting State v. Demarest, 252 N.J. Super. 323, 331 (App. Div. 1991)).

In making a finding of abuse or neglect, a court considers "the totality of the circumstances, since '[i]n child abuse and neglect cases the elements of proof

are synergistically related. Each proven act of neglect has some effect on the [child]. One act may be "substantial" or the sum of many acts may be "substantial."'" N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329-30 (App. Div. 2011) (alterations in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010)).

Applying these guiding principles, we conclude Judge Suh correctly determined that the children were abused or neglected by defendant. Contrary to defendant's contentions on appeal, a parent need not "act with a willful or purposeful intent to commit child abuse" in order to be found culpable under Title Nine. G.S., 157 N.J. at 177. Proof that a parent's "actions were inadvertent and she did not intend to harm" a child does not preclude a finding of abuse or neglect. Ibid. A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

It is true that "[a]t the very least, a minimum degree of care means that a parent's conduct must be 'grossly negligent or reckless'" and "a parent's negligent conduct is not sufficient to justify a finding of abuse or neglect under [Title

Nine]." N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 180 (2014) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306 (2011)). Here, defendant's actions were more than "merely negligent." T.B., 207 N.J. at 307. By intentionally taking the children out at night and parking them in the back seat of her car so she could smoke marijuana in a closed park, she exposed her children to not only the smoke in the car but also a high risk that she could be arrested in her children's presence, amounting to far more than mere negligence. Moreover, the substantial risk of psychological impairment to at least defendant's older child was obvious from her reaction to what was an avoidable traumatic event and did not require, as defendant contends, any expert testimony. See Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015) (holding that "[f]ailing to perform a cautionary act" that "rise[s] to the level of gross negligence" constitutes abuse or neglect).

To the extent we have not addressed any of defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-0332-18T3