252 N.J. Super. 323 (1991)
599 A.2d 937
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL DEMAREST, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 1991.
Decided December 11, 1991.
*324 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Wilfredo Caraballo, Public Defender, attorney for appellant (Michael B. Jones, Assistant Deputy Public Defender, of counsel and on the brief).
Nicholas L. Bissell, Jr., Somerset County Prosecutor, attorney for respondent (Gilbert G. Miller, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to determine the culpability requirement for the offense of endangering the welfare of a child.
Defendant was indicted for aggravated assault, in violation of N.J.S.A. 2C:12-1b(1), and two counts of endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4a. A jury acquitted defendant of aggravated assault but convicted him of the lesser included offense of simple assault, in violation of N.J.S.A. 2C:12-1a(1), and both counts of endangering the welfare of a child. The court sentenced defendant to concurrent three year terms of probation for each offense, subject to the special condition that he submit to psychological and substance abuse evaluations and undertake whatever treatment and care was recommended as a result of those evaluations.
*325 On appeal, defendant argues that (1) the prosecutor made prejudicially improper comments in his summation and (2) the court erred in not instructing the jury that defendant must have acted knowingly in order to be found guilty of endangering the welfare of a child.
Defendant's arguments regarding the prosecutor's summation are clearly without merit and do not require discussion. R. 2:11-3(e)(2). However, we conclude that the trial court incorrectly instructed the jury regarding the state of mind with which the defendant must have acted to be found guilty of endangering the welfare of a child. Therefore, we affirm defendant's conviction for simple assault but reverse his convictions for endangering the welfare of a child and remand those charges for a retrial.
Defendant's convictions arise out of an incident which occurred while he was at home with his four children during the evening of October 1, 1988. Defendant's eldest daughter, then twelve, made dinner for three younger children, including the victims, M.J.D. and M.D., who were then eight and six. While the children were eating in the kitchen, defendant was watching television in an adjoining room. When the younger children became noisy and unruly, defendant went into the kitchen to quiet them down. Defendant then picked up a pot of hot water which had been used to cook hot dogs.
The testimony is conflicting as to what happened next. According to the victims, defendant walked over to M.J.D. and poured some of the scalding hot water on her chest, a little of which splashed on M.D. According to defendant, he tried to show the victims the hot water to impress upon them the dangers of horse-play in the kitchen, but the pot had a loose handle, and as he showed the girls the hot water, the pot tilted and some of the water splashed on them. Thus, the critical factual issue at trial was whether defendant intended to pour the hot water on his daughters.
The court's instructions to the jury conveyed the impression that defendant could be found guilty of endangering the welfare *326 of a child based on simple negligence, even if he did not intend to pour the hot water on his daughters. Thus, the court advised the jury that one element of the offense is causing injury to a child "by other than accidental means." The court subsequently told the jury that an act which is "accidental ... is not a criminal offense" and that an accident is "an unforseen event, misfortune, act or omission, which is not the result of negligence or misconduct." The court also told the jury that defendant could be found guilty for punishment of his children "that is not reasonably called for and is unreasonably severe," unreasonable being defined as "irrational, foolish, unwise, senseless, immoderate, exorbitant." A reasonableness test is of course the classic standard for liability based on negligence. Therefore, the court's jury instructions could be found to correctly state the applicable law only if the required degree of culpability for the offense of endangering the welfare of a child was simple negligence.
The New Jersey Code of Criminal Justice adopted a provision of the Model Penal Code which defines nearly all criminal offenses in terms of four basic states of culpability: purpose, knowledge, recklessness, and negligence. N.J.S.A. 2C:2-2; see generally, State v. Breakiron, 108 N.J. 591, 597-99, 532 A.2d 199 (1987).[1] Although most offenses proscribed by the Code of Criminal Justice specifically set forth one of these culpable mental states as an element, a small number of Code offenses are defined without express reference to any culpable state of mind. The gap which this omission creates in the elements of these offenses is filled by N.J.S.A. 2C:2-2c(3), which provides in pertinent part:
Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable *327 mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining crime with the culpability defined in paragraph b.(2) of this section.
The reference in N.J.S.A. 2C:2-2c(3) to N.J.S.A. 2C:2-2b(2) establishes "knowingly" as the required state of mind if an offense is defined without a specified culpability requirement. See State v. Rovito, 99 N.J. 581, 586, 494 A.2d 309 (1985); State v. Sewell, 242 N.J. Super. 499, 577 A.2d 537 (App.Div. 1990); see generally, Alan M. Green, Note, Implied Culpability Terms in an Offense Definition: Problems with the `Gap Filler' Provisions in the New Jersey Code of Criminal Justice, 13 Rutgers L.J. 775 (1982).
The offense of endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4a, does not contain an express mental culpability requirement. This section provides in pertinent part:
Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6-1, R.S. 9:6-3 and P.L. 1974, c. 119, § 1 (C. 9:6-8.21) is guilty of a crime of the third degree.
Defendant argues that because N.J.S.A. 2C:24-2a is silent regarding the mental state required for the offense, the gap filler provision of N.J.S.A. 2C:2-2c(3) comes into play and required the State to prove that he acted "knowingly" to convict him of endangering the welfare of a child.
The State concedes that defendant's argument would be correct if he had been charged with the form of endangering the welfare of a child proscribed by the first part of N.J.S.A. 2C:24-4a, namely, "engag[ing] in sexual conduct which would impair or debauch the morals of the child." However, the State argues that the second part of N.J.S.A. 2C:24-4a, which incorporates by reference sections of Title 9 defining an "abused or neglected child," also incorporated by reference culpable mental states reflected in Title 9. In particular, the State relies upon subsections of N.J.S.A. 9:6-8.21, which define an "abused and neglected child" as

*328 a child less than 18 years of age whose parent or guardian ...
(1) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of ... serious or protracted disfigurement, or protracted impairment of physical or emotional health
....
... or a child whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of a failure of his parent or guardian ... to exercise a minimum degree of care
....
(b) ... by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment. [N.J.S.A. 9:6-8.21 (emphasis supplied)].
The State argues that these provisions should be read, through their incorporation into N.J.S.A. 2C:24-4a, to prescribe the culpability required for the offense of endangering the welfare of a child, and therefore that a person who acts recklessly or even negligently may be found guilty of the offense.
To evaluate this argument, it is appropriate first to review the legislative history of N.J.S.A. 2C:24-4a. The 1971 commentary to the proposed Code states that "[t]he intent [of N.J.S.A. 2C:24-4a] is to incorporate the crime now defined in N.J.S. 9:6-3 without substantial change except for the penalty provisions." Final Report of the New Jersey Criminal Law Revision Commission, Vol. II, at 259 (1971). The method chosen by the Commission to accomplish this objective was to incorporate by reference the definitions of "abused" "abandonment," "cruelty" and "neglect" contained in N.J.S.A. 9:6-1, which also are incorporated in N.J.S.A. 9:6-3.[2]
After the Criminal Law Revision Commission issued its report but before the Legislature enacted the Code, the scope of *329 civil remedies for child abuse and neglect were expanded by the enactment of chapter 119 of the Laws of 1974, N.J.S.A. 9:6-8.21 to 8.73, and further extended by amendments to this legislation enacted as chapter 209 of the Laws of 1977. The final form of the offense of endangering the welfare of a child contained in the Code as enacted in 1979 incorporates by reference the definitions of "abused" and "neglected" child in both N.J.S.A. 9:6-1 and N.J.S.A. 9:6-8.21.[3] However, the State's argument that N.J.S.A. 2C:24-4a extends to reckless or negligent conduct is based solely on the definitions of "abused" or "neglected" child contained in N.J.S.A. 9:6-8.21.
Read in light of this legislative history, N.J.S.A. 2C:24-4a does not, in the language of N.J.S.A. 2C:2-2c(3), "clearly indicat[e] a legislative intent to impose strict liability" or "expressly designat[e]" a culpable mental state other than "knowingly" for the offense of endangering the welfare of a child. Although N.J.S.A. 2C:24-4a incorporates the provisions of Title 9 to describe the kind of "harm" to a child required to establish the offense, it does not refer to Title 9 to define the other elements of the offense, including in particular the requisite element of mental culpability. Thus, N.J.S.A. 2C:24-4a does not provide that any conduct which would establish a violation of N.J.S.A. 9:6-8.21 also constitutes the third degree offense of endangering the welfare of a child. Furthermore, nothing in the legislative history suggests a legislative intent to incorporate *330 wholesale all the provisions of N.J.S.A. 9:6-8.21 into N.J.S.A. 2C:24-4a. Therefore, we conclude that N.J.S.A. 2C:2-2c(3) prescribes "knowing" conduct as the culpability requirement for the offense of endangering the welfare of a child.
The differences in the legislative objectives of N.J.S.A. 2C:24-4a and N.J.S.A. 9:6-8.21 to -8.73 supports this conclusion. Like other criminal provisions, the essential objective of N.J.S.A. 2C:24-4a is to deter conduct that unjustifiably inflicts or threatens serious harm to others, to rehabilitate offenders and to confine persons when required for public protection. N.J.S.A. 2C:1-2; see State v. Ivan, 33 N.J. 197, 162 A.2d 851 (1960). In contrast, the focus of proceedings under Title 9 is not the culpability of parents' conduct but rather the protection of children from acts or conditions which threaten their welfare. See New Jersey Div. of Youth & Family Services v. C.M., 181 N.J. Super. 179, 436 A.2d 1152 (J. & D.R.Ct. 1981). Thus, the definition of an "abused or neglected" child includes
a child whose physical, mental or emotional condition has been impaired or is in imminent danger of being impaired as the result of the failure of his parent .. . to exercise a minimum degree of care ... in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so. [N.J.S.A. 9:6-8.21c(4)(a)].
A parent's mental retardation, mental illness or other personal deficiency which does not involve the kind of culpability ordinarily addressed through the criminal law may result in inadequate parenting which would make a child abused or neglected within the meaning of this subsection. Yet, if the incorporation into N.J.S.A. 2C:24-4a of the definition of "neglected or abused" child in N.J.S.A. 9:6-8.21 were construed, as the State urges, to include the requisite culpable mental state, any parent who had provided inadequate care, as defined in N.J.S.A. 9:6-8.21c(4)(a), would be guilty of endangering the welfare of a child. Consequently, this construction of N.J.S.A. 2C:24-4a would eliminate any distinction between the kinds of conduct required to activate the civil remedial provisions of Title 9 and those required for a conviction of a third degree criminal offense.
*331 The construction of N.J.S.A. 2C:24-4a urged by the State also would represent a significant departure from the Code's general approach to the subject of criminal culpability. One of the general purposes of the Code is to "limit the condemnation of conduct as criminal when it is without fault." N.J.S.A. 2C:1-2a(6). This purpose is reflected by the directive of N.J.S.A. 2C:2-2c(3) that the provisions of the Code shall be construed to impose strict liability only if that legislative intent is "clearly indicat[ed]." See Final Report of the New Jersey Criminal Law Revision Commission, supra, at 46-47. Furthermore, the only form of negligence for which criminal liability is imposed is a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." N.J.S.A. 2C:2-2b(4). In view of this general approach to the subject of criminal culpability under the Code, it is unlikely the Legislature intended to authorize a conviction for a third degree offense based on strict liability or simple negligence. Therefore, the more reasonable construction of the incorporation into N.J.S.A. 2C:24-4a of the definition of "abused or neglected child" under Title 9 is that it describes only the kind of "harm" to a child and not the mental state of the accused required to establish an offense. Moreover, if there were any doubt whether this is the correct construction of N.J.S.A. 2C:24-4a, it would be appropriate to resolve that doubt in favor of defendant. See State v. Churchdale Leasing, 115 N.J. 83, 102, 557 A.2d 277 (1989); State v. Dixon, 114 N.J. 111, 117, 553 A.2d 1 (1989).
An additional reason supporting this construction is that it results in a single culpable mental state applying to all alleged violations of N.J.S.A. 2C:24-4a. As previously discussed, the first clause of N.J.S.A. 2C:24-4a provides that a caretaker "who engages in sexual conduct which would impair or debauch the morals of the child" is guilty of endangering the child's welfare. Since this clause does not set forth any requisite culpable mental state and does not refer to Title 9, it is clear that the *332 State is required by N.J.S.A. 2C:2-2c(3) to prove as an element of the offense that a defendant acted "knowingly."[4] But if the State's construction of N.J.S.A. 2C:24-4a were correct, the State could convict a defendant of the kinds of endangering the welfare of a child proscribed by the second clause of N.J.S.A. 2C:24-4a upon a showing of simple negligence. We are unable to discern any reason why the Legislature would have required a more culpable mental state for sexual mistreatment of a child than for other forms of endangering a child's welfare.
Our construction of N.J.S.A. 2C:24-4a avoids another anomaly. As previously discussed, the intent of N.J.S.A. 2C:24-4a was to incorporate the offense previously proscribed by N.J.S.A. 9:6-3 but to impose more severe penalties. Our pre-Code decisions held that the State was required to prove that a defendant's actions were intentional or purposeful, rather than merely inadvertent or accidental, in order to establish a violation of N.J.S.A. 9:6-3. State v. Hofford, 169 N.J. Super. 377, 384, 404 A.2d 1231 (App.Div. 1979);[5]State v. Muniz, 150 N.J. Super. 436, 447, 375 A.2d 1234 (App.Div. 1977), certif. denied, 77 N.J. 473, 391 A.2d 488 (1978); State v. Rivera, 133 N.J. Super. 453, 455-56, 337 A.2d 385 (App.Div. 1975); State v. *333 Burden, 126 N.J. Super. 424, 427, 315 A.2d 43 (App.Div.), certif. denied, 65 N.J. 282, 321 A.2d 243 (1974). Thus, the State could not convict a person under N.J.S.A. 9:6-3 based on conduct which was only reckless or negligent; instead, it was required to show that the defendant acted at least intentionally. When the Legislature enacted N.J.S.A. 2C:24-4a, it did not repeal N.J.S.A. 9:6-3.[6] Consequently, if a person could be convicted under N.J.S.A. 2C:24-4a without showing that he acted "knowingly," this would allow a conviction for the third degree offense proscribed by N.J.S.A. 2C:24-4a based on a lesser showing of culpability than required for the fourth degree offense proscribed by N.J.S.A. 9:6-3, even though both offenses are directed at the same kind of conduct. This would be contrary to the Code's general principle that "[t]he lesser the grading of the offense, the less culpable need be the mental state of the actor." State v. Dixon, supra, 114 N.J. at 113, 553 A.2d 1; see State v. Curtis, 195 N.J. Super. 354, 364, 479 A.2d 425 (App.Div. 1984), certif. den., 99 N.J. 212, 491 A.2d 708 (1984). To avoid this anomaly, N.J.S.A. 9:6-3 and N.J.S.A. 2C:24-4a should be construed harmoniously to both require proof of "knowing" culpability. See Loboda v. Township of Clark, 40 N.J. 424, 435, 193 A.2d 97 (1963).
This construction of N.J.S.A. 2C:24-4a also conforms with the culpability requirement of the offense of endangering the welfare of a child defined in the Model Penal Code, which provides that:
A parent, guardian or other person supervising the welfare of a child under 18 commits a misdemeanor if he knowingly endangers the child's welfare by violating a duty of care, protection or support. [Model Penal Code § 230.4 (1962)].
The commentary to this section of the Model Penal Code states:
The statute explicitly requires that the actor be aware of the fact that his conduct endangers the welfare of the child. This aspect of the offense *334 preserves adherence to the general principle that criminal liability should be premised upon subjective blameworthiness. [Model Penal Code § 230.4 commentary at 451 (1980)].
We add one final observation. We conclude for the reasons previously stated that the absence of any express culpability requirement in N.J.S.A. 2C:24-4a brings into play the gap filler provision of N.J.S.A. 2C:2-2c(3), thus making "knowing" conduct the culpability requirement for endangering the welfare of a child. However, it is within the province of the Legislature to reconsider the culpability requirement for this offense and to provide expressly that a person with a legal duty to care for a child who "recklessly" causes harm to the child may be guilty of a violation of N.J.S.A. 2C:24-4a.
Accordingly, we affirm defendant's conviction for assault but reverse his convictions for endangering the welfare of his children and remand for a new trial on those charges.
NOTES
[1] A comprehensive discussion of the pre-Code law of criminal culpability may be found in State v. Savoie, 67 N.J. 439, 454-64, 341 A.2d 598 (1975).
[2] The Commission expressed some misgivings regarding this proposal:

We are not happy with the breadth of, nor the precision of the definitions of, abuse, abandonment, cruelty and neglect in N.J.S. 9:6-1. The conduct which is appropriately prevented by non-criminal sanctions need not always also be made criminal. Further, provisions of Chapter 6 of Title 9 show the basic thrust of it not to be to provide a criminal sanction but rather a strong remedy to compel support and/or proper conduct toward the child. Pending a reexamination of those definitions for civil purposes, we do not believe we should tamper with them for criminal purposes which might destroy the most effective sanction to stop the misconduct. We do believe that reconsideration of this entire field of law would be appropriate. With hesitancy, then, we simply recommend continuation of existing law. [Final Report of the New Jersey Criminal Law Revision Commission, supra, at 260].
[3] Although N.J.S.A. 2C:24-4a also refers to N.J.S.A. 9:6-3, N.J.S.A. 9:6-3 does not contain any definition of "abused" or "neglected" child. However, as previously indicated, it is the source statute from which N.J.S.A. 2C:24-4a was derived.
[4] The Criminal Model Jury Instructions reflect this construction of the first clause of N.J.S.A. 2C:24-4a. New Jersey Model Jury Charges, Criminal, Endangering the Welfare of a Child  N.J.S.A. 2C:24-4a (approved October 17, 1988).
[5] In Hofford the trial court issued an opinion in connection with defendants' post trial motions which concluded that defendants could be convicted under N.J.S.A. 9:6-3 without the State establishing "proof of criminal intent." State v. Hofford, 152 N.J. Super. 283, 296, 377 A.2d 962 (Law Div. 1977). However, the trial court had instructed the jury that the State was required to prove that defendants "by an intentional and wilful act of omission or commission" had caused harm to their children and that "[t]he word wilfully in the context of this statute means intentionally or purposely as distinguished from inadvertently or accidentally." State v. Hofford, 169 N.J. Super. 377, 383-84, 404 A.2d 1231 (App.Div. 1979). We concluded that there was no error in this jury instruction without expressing any view regarding the trial court's dictum that N.J.S.A. 9:6-3 imposes strict criminal liability upon a caretaker who causes harm to a child. Id. at 384, 404 A.2d 1231. We now expressly disapprove this dictum.
[6] N.J.S.A. 9:6-3 was amended by Chapter 26 of the Laws of 1990, to make a violation of this section, which formerly had been a misdemeanor, a fourth degree offense.