# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5121-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

SAMUEL G. CARUTHERS,

     Defendant-Appellant/
     Cross-Respondent.

_____

Submitted April 30, 2020 – Decided July 23, 2020

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 16-06-0243.

George T. Daggett, attorney for appellant/cross-respondent.

Francis A. Koch, Sussex County Prosecutor, attorney for respondent/cross-appellant (Shaina Brenner, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Samuel G. Caruthers of third-degree endangering the welfare of a child by a non-caretaker, N.J.S.A. 2C:24-4(a)(2) (count one); disorderly persons simple assault, a lesser-included, N.J.S.A. 2C:12-1(a)(1) (count two); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count five). Defendant had been originally charged with third-degree aggravated assault by attempting to cause significant bodily injury, N.J.S.A. 2C:12-1(b)(7). The jury acquitted him of third-degree aggravated assault by attempting to cause injury with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count three); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four).

Defendant unsuccessfully sought admission into the pretrial intervention program (PTI). Defendant was sentenced, on June 26, 2019, to a three-year probationary term subject to conditions.[1] He now appeals his convictions, asserting that the child endangering verdict, when juxtaposed to the disorderly persons simple assault, means the indictable offense must be dismissed as internally inconsistent, that the unlawful possession of a weapon should be dismissed because it is inconsistent with his acquittal on the possession of a

---

[1] An amended judgment was entered on July 9, 2019, to include a no contact provision.

weapon for unlawful purpose, and that the trial judge erred in instructing the jury that defendant need not be aware of the age of the assault victim in order for him to be convicted of child endangering. For the reasons that follow, we affirm.

The circumstances leading to the charge can be briefly summarized. On February 14, 2016, twelve-year-old J.A. and his family were on the beginner's slope of a ski resort. J.A. was learning how to snowboard; the rest of the family to ski. As J.A. came down the slope, he saw a skier in front of him, but could not stop. He accidentally collided with the skier, causing him to fall. It was the second time J.A. had attempted to snowboard. When he tried to stand, he struggled to release his feet from the snowboard straps when he felt pain in his stomach from someone jabbing a ski pole into him. The assailant then punched him five or six times in the face and his left side while he lay curled up in the snow. The subsequent hospital visit record reflected that J.A. suffered a facial contusion, lip contusion, and a bruised lip. He complained of soreness to his torso. Hospital records indicated that J.A. was five foot six and weighed 114 pounds.

The State also presented several eyewitnesses who corroborated J.A. and his family's account, as his parents witnessed the incident from the bottom of

the ski slope. One eyewitness, an employee of the resort, said defendant purposely skied into the snowboarder, striking him with the curved front of his skis in the torso, and "aggressive[ly]" punching J.A. several times in the face.

Defendant testified that he and his family were also enjoying a holiday on the ski slopes. He was teaching his ten-year-old son how to navigate the beginner's slope when he saw J.A., on the snowboard, strike his child. He claimed he grabbed at J.A.'s jacket after seeing him collide with his son while traveling at a high rate of speed, to prevent him from crashing into his son again. Defendant said J.A. took a swing at him, he automatically swung back, and hit him once while J.A. was on the ground. He admitted denying to police that he had struck J.A., had not realized J.A. was a child, and saw no injuries on him. Defendant said his intent "was trying to preserve [his] son's life."

The judge instructed the jury in accord with the proposed charge, discussed during the charge conference. After the jury was charged, defendant objected to the instruction that defendant need not know the age of the child. The basis for his objection, then and now, is that if there was a legitimate reason defendant could not have perceived J.A.'s age because of his clothing, his position in the snow, the fact the child had facial hair, and that he swore when struck, the jury could convict only if it found defendant knew the child's age.

The judge responded that he took the relevant language from the model charge.

He refused to dismiss the endangerment charge.

On appeal, defendant raises the following points:

> POINT I
>
> N.J.S.A. 2C:24-4(a)(2) DOES NOT APPLY TO A SIMPLE ASSAULT.
>
> POINT II
>
> THE JURY'S VERDICT OF GUILTY AS TO POSSESSION OF A WEAPON IS INCONSISTENT WITH ITS OTHER FINDINGS.
>
> POINT III
>
> THE COURT BELOW ERRED IN TELLING THE JURY THAT THE DEFENDANT DID NOT HAVE TO KNOW THE AGE OF THE JUVENILE.

By way of cross-appeal, the State raises the following issue:

> POINT I
> THE LOWER COURT ERRED WHEN IT RULED THAT THE STATE COULD NOT USE THE STATEMENTS MADE BY THE DEFENDANT DURING HIS PRETRIAL INTERVENTION INTERVIEW FOR IMPEACHMENT PURPOSES.

I.

"Clear and correct jury charges are essential for a fair trial, and the failure to provide them may constitute plain error." State v. Gonzalez, 444 N.J. Super.

62, 76 (App. Div. 2016). "The proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018); see also Dynasty, Inc. v. Princeton Ins. Co., 165 N.J. 1, 17-18 (2000). "[I]n reviewing any claim of error relating to a jury charge, the 'charge must be read as a whole in determining whether there was any error'. . . ." Gonzalez, 444 N.J. Super. at 70-71 (quoting State v. Torres, 183 N.J. 554, 564 (2005)). In addition, "the effect of any error must be considered 'in light of the overall strength of the State's case' . . . ." Id. at 71 (quoting State v. Walker, 203 N.J. 73, 90 (2010)).

Here, defendant objected to the child endangerment instruction, albeit after the judge charged. Giving him the benefit of the doubt, we review use of the charge for harmless error. Defendant contends that the jury's conviction of a disorderly persons simple assault is inherently inconsistent with the child endangering conviction, compelling dismissal of that count of the indictment.

Child endangerment occurs when "[a]ny person [other than a caretaker] . . . who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3, and section 1 of P.L.1974, c. 119 (C.9:6-8.21) is guilty of a crime . . . of the third degree." N.J.S.A.

2C:24-4(a)(2) (emphasis added). The statutory elements the State must prove beyond a reasonable doubt are that the victim was a child, defendant caused the victim harm that would make him abused or neglected, and that defendant knew the conduct would make the child abused or neglected. N.J.S.A. 2C:24-4(a)(2). The judge's instruction tracked the relevant model jury charge. See Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Third Degree) (N.J.S.A. 2C:24-4(a)(2))" (rev. March 9, 2015). Defendant anchors the argument on the fact no mention is made in those portions of Title 9 which encompass the conduct in this case.

There is no question that confusion arises with reference to child endangerment when the conduct refers back to definitions found in Title 9. However, we have previously stated that "[t]he drafters of N.J.S.A. 2C:24-4(a) of the Criminal Justice Code expressed the intention to 'incorporate the crime now defined in N.J.S.A. 9:6-3 without substantial change except for the penalty provision.'" State v. D.V., 348 N.J. Super. 107, 114 (App. Div. 2002) (quoting Final Report of the New Jersey Criminal Law Revision Commission, Volume 11 at 259 (1971)). We have also said that terms, such as abuse, are defined in N.J.S.A. 9:6-1, and incorporated into 9:6-3. State v. Demarest, 252 N.J. Super. 323, 328 (App. Div. 1991). In State v. N.A., 335 N.J. Super. 143, 153-54 (App.

Div. 2002), we characterized the offenses of endangering the welfare of children and Title 9 offenses related to cruelty and neglect of children as the same—the only difference being the degree of the offense and the penalty. See also Demarest, 252 N.J. Super. at 329-33. Each criminalizes the same harm or risk of harm to the child; each requires the same proof of "knowing culpability." N.A., 355 N.J. Super. at 153 (quoting Demarest, 252 N.J. Super. at 333).

The statute encompasses the harm inflicted in this case, albeit minimal, by a stranger. J.A.'s swollen and bruised lip, laceration to the face, and sore and bruised torso is the type of harm proscribed in Title 9. No precedent leads us to conclude that because the conduct in this case was a simple and not an aggravated assault, the conduct is excluded from child endangering. The statute has consistently been held to incorporate all the definitions included in Title 9, and the assault in this case falls within that category. Ultimately, the wrongful conduct was an assault upon a child. Thus, the court did not err in failing to dismiss the child endangering charge.

Furthermore, defendant's argument that he was improperly charged with endangering as opposed to a Title 9 offense also lacks merit. In State v. Fuqua, 234 N.J. 583, 596 (2018), among other things, the court explained that the interplay between the statutes gives a prosecutor's office discretion to decide

under which to proceed.    The legislative intent appears to be to defer to the discretion of a prosecutor regarding what charges are presented to a grand jury. In that fashion, there is judicial oversight through the grand jury and the petit jury of charging decisions.  N.A., 355 N.J. Super. at 153-54.  Thus, the court did not err in both charging the jury in accord with the Model Jury Charge as to child endangerment and refusing to vacate the conviction even though the jury convicted defendant of simple assault.

## II.

Defendant further contends that the jury verdict was internally inconsistent because the jury acquitted him of third-degree assault with a deadly weapon and possession of a weapon for unlawful purposes, instead finding him guilty of unlawful possession of a weapon.  This point also lacks merit.

First, even if we agreed that the verdicts are internally inconsistent, which we do not, inconsistent verdicts are permissible in this state.  State v. Grey, 147 N.J. 4, 11 (1996).  In reviewing an inconsistent verdict, the only question is whether the charge on which the jury convicted had sufficient support in the record.  See State v. Banko, 182 N.J. 44, 56 (2003).  That is true in this case, where eyewitnesses corroborated J.A.'s version of events.

The argument that the jury finding was inconsistent is not necessarily accurate.  N.J.S.A. 2C:39-5(d) states that any person "who knowingly has in his possession any other weapon[, such as a ski pole,] under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime . . . ."  That means the jury credited the fact that the ski pole was being used for its lawful purpose up until defendant assaulted J.A.  Once he made the decision to strike the child, then the pole became a weapon and became an object being used inappropriately.  This argument lacks merit.

III.

Finally, defendant contends that the judge erred by instructing the jury that the State need not prove that defendant knew J.A.'s age in deciding whether he was guilty of child endangering.  The judge analogized the charge to sexual assault cases in which knowledge of the victim's age is irrelevant—the significant factor being the victim's actual age.  In this case, the analogy seems quite apt.  But the State should not have to present proof of knowledge, an elusive task involving many subjective factors.  A victim who looks like a child to one person may not to another.  Defendant's claim that J.A. looked like an adult is not supported by the hospital record of the victim's size and weight.

And, by immediately attacking J.A., as opposed to going to the aid of his own child, defendant lost the opportunity to assess the characteristics—the age—of the victim. In any event, the judge's charge tracked the model jury instruction. It required the State to prove beyond a reasonable doubt only that the victim was a child, that defendant knowingly caused him harm that would make the child abused or neglected, and that defendant knew such conduct would cause the victim harm. Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Third Degree) (N.J.S.A. 2C:24-4(a)(2))" (rev. March 9, 2015). In any event, a jury charge is presumed to be proper if it tracks the model jury charge. See State v. R.B., 183 N.J. 308, 325 (2005). Nothing requires the State to prove that defendant could not be convicted unless he knew the child's age.

## IV.

The State argues by way of cross-appeal that the trial court should not have barred the use of defendant's PTI interview statements for impeachment purposes. Since we affirm the conviction, we do not reach the moot cross-appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5121-18T4